# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AWONDRAIL STEELE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-20-436-JFH-SPS |
| KILOLO KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,[1] | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Awondrail Steele requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED, and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty years old at the time of the administrative hearing (Tr. 119). She had four or more years of college education and has no past relevant work (Tr. 23, 362). The claimant alleges that she has been unable to work since June 9, 2014, due to back and neck problems, panic disorder without agoraphobia, chronic laryngitis, vitamin D deficiency, inflammation in her larynx, larynogopharyngeal reflux disease, and GERD (Tr. 361).

## Procedural History

On July 16, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 30, 2020 (Tr. 11-25). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she could never climb ladders/ropes/scaffolds; and she must avoid concentrated exposure to hazards including no driving as a part of work. Additionally, he found she can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, and can adapt to a work situation, but cannot relate to the general public (Tr. 17). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, power screwdriver operator, injection molding machine tender, collator operator, eyeglass frame polisher, addressing clerk, and tube operator (Tr. 23-24).

## Review

The claimant contends[3] that the ALJ erred by: (i) failing to properly account for her mental and cognitive impairments, (ii) failing to properly account for her physical impairments, (iii) failing to properly assess her subjective complaints, and (iv) failing to properly identify jobs she could perform. The undersigned Magistrate Judge agrees with

---

[3] The undersigned Magistrate Judge notes that Plaintiff's Opening Brief was not filed in compliance with this Court's L. Civ. R. 7.1(c) as to length and format of the brief, but nevertheless chooses to proceed on the merits at this time.

the claimant's first contention, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative changes of the lower thoracic spine, degenerative disc disease of the cervical spine/cervicalgia, fibromyalgia, unspecified joint disorder, migraine headaches, chronic pain syndrome, mild sensory neuropathy, insomnia, arthralgias, GERD, anemia, major depressive disorder, unspecified anxiety disorder, panic disorder, personality disorder, and post-traumatic stress disorder (Tr. 14). The relevant medical records as to the claimant's mental impairments reveal that the claimant received treatment from her primary care facility for anxiety and depression. On June 23, 2017, the claimant presented to Mercy Hospital in Fort Smith, Arkansas with pressured speech, and it was difficult for them to determine what she wanted because she spoke of anxiety, agitation, and bells palsy (Tr. 470). The treatment notes state, "She stated that she prayed for the people in the waiting room and that I was not a man of God. She was very agitated and upset." (Tr. 470). The claimant was found to have a UTI but refused a prescription, and her exam was not completed (Tr. 470).

On October 9, 2018, Dr. Denise LaGrand, Psy.D., conducted a mental status examination of the claimant. At the exam, Dr. LaGrand stated that the claimant was pleasant, cooperative, and attentive, but that her mood was anxious. She repeatedly noted that the claimant's speech was pressured, and that she had an average ability to comprehend simple language but her ability to understand moderately-complex directions and language was low average (Tr. 725-726). She stated that the claimant did not appear to have

disorders of perception, confusion, disorganized behavior, or disorientation, but that her speech was "quite pressured and fairly tangential" (Tr. 726). She estimated the claimant's intelligence low average or above (Tr. 726). Dr. LaGrand concluded by stating, "She presented with pressured speech and mildly tangential thinking; it is not clear if this is typical of her, or indicative of a manic episode. Her current treatment records will be instrumental in making a more definitive diagnosis. Claimant's ongoing symptoms are likely to result in significant work-related limitations." (Tr. 726). Dr. LaGrand noted ten areas of moderate impairment, including understanding and memory, pace, and work interruptions due to psychiatric symptoms, as well as the marked impairments of sustained concentration and persistence, dealing with stress in a work environment, and interacting with coworkers and the public (Tr. 727).

The following month, the claimant presented to Dr. Emily Grewe-Nelson, D.O., for a physical examination. As part of the exam, however, Dr. Grewe-Nelson noted that the claimant's mood was appropriate and she had clear thought processes and good memory, but that her concentration was not good (Tr. 732). In the addition to noting a decreased range of motion in the claimant's back in the "Impression" section, Dr. Grewe-Nelson also noted that the claimant had difficulty concentrating, but that her mood was stable on exam (Tr. 733).

On February 27, 2019, Dr. Steve Belinga, a neurologist, conducted a cognitive assessment of the claimant following clinical suspicion of a degenerative cognitive disorder (Tr. 876). The claimant had an abnormal cognitive score, as well as scores consistent with anxiety and concerning for depression (Tr. 876-882). Dr. Belinga felt that the scores, in

addition to *no* decline in the claimant's activities of daily living, indicated a mild cognitive impairment rather than early dementia, but recommended continued clinical follow up for clarity (Tr. 876). Dr. Belinga saw her again on follow up for, *inter alia*, memory loss, noting that the claimant was "incredibly overwhelmed with her constant memory loss, which hasn't improved since her last visit" (Tr. 1099).

Dr. William Farrell initially determined upon reviewing the claimant's records that she could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 168). Upon review, Dr. Maurice Prout, Ph.D. made the same assessment (Tr. 206). Both opinions pre-date Dr. Belinga's assessment of the claimant.

At the administrative hearing, the claimant responded to questions from the ALJ, including confirming her date of birth, age, and education (Tr. 119-120). When asked about her college grade point average, she said it was "[a] 'C.'" (Tr. 121). When asked if that was a 2.5 grade point average, she replied, "I would say even give myself about a 2.5, 2.4." (Tr. 121). She then summarized her job training for her part-time job as a home health carer for her mother (Tr. 123-125). When asked by her attorney about her impairments, the claimant mentioned her stress levels and that people called her crazy, then began speaking in rather stream-of-conscience response, beginning with "I'm not going to say that I'm crazy, but I can say that I'm – you know how you get fed up, and you're walking for Christ? I know that it's not easy. But at the same time, it's been really, the retail, I was really hurting more so as well as my larynx." She continued discussion various ailments and various doctors for some minutes without interruption. (Tr. 129-131). She

then engaged in a conversation with her attorney about how she sees the type of spirit within a person to tell if they are vindictive, just by looking at them (Tr. 131-134). When asked about Dr. LaGrand's assessment that she had trouble focusing, the claimant responded, "Tahlequah, to me, this lady had a dog that was taller than this table, literally under her desk. She left me in there with his dog. This dog—I had black on. Had I known, just by the way I was dressed, they didn't ask me anything. They didn't do anything." (Tr. 134). When asked about trouble with concentration, she replied, "No. When she asked me about America – I think it was South America, or something, I didn't know that answer. But –" (Tr. 135).

In his written opinion at step four, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence as to the claimant's physical impairments, the ALJ noted Dr. Grewe-Nelson's "Impression" (Tr. 20). As to her mental impairments, the ALJ noted the scarcity of treatment records for her mental impairments, as well as Dr. LaGrand's evaluation. He found that the claimant's delay in seeking mental health treatment (three years after her alleged onset date, which applies to both physical *and* mental impairments) and Dr. LaGrand's evaluation were not consisted with treatment records where the claimant's symptoms were noted to be "well controlled." (Tr. 20-22). He then found the state reviewing physician opinions persuasive because of their position as state reviewing physicians and because the opinions were "generally supported by and consisted with the medical evidence" (Tr. 22). As to Dr. LaGrand's opinion, he found it to be somewhat persuasive, only to the extent it was consistent with the state reviewing physicians (Tr. 22). Without specifying, he found that the marked and moderate limitations

were inconsistent with the information in her evaluation report and therefore unpersuasive (Tr. 22). He found Dr. Grewe-Nelson's opinions to be persuasive and consistent with the evidence in the record (Tr. 22). The ALJ made no mention of Dr. Belinga's treatment records or assessments.

The claimant first contends that the ALJ failed to properly evaluate her mental impairments. Specifically, the claimant contends the ALJ failed to address the claimant's cognitive impairments, noting her testimony at the administrative hearing and the emergency room visit to Mercy Hospital, as well as Dr. LaGrand's evaluation in combination from the testing from Dr. Belinga. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were

considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In this case, the ALJ properly summarized Dr. LaGrand's opinion, but failed to even mention Dr. Belinga's opinion. Moreover, he failed to properly assess Dr. LaGrand's opinion for its persuasiveness, supportability, and consistency. While he mentioned those words in his opinion, he failed to provide a substantive analysis to guide this Court. This was error because the regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to this factor, the ALJ ignored it completely, failing to discuss the objective medical findings. Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ asserted without support that her conclusions were inconsistent with the information in her evaluation report, without specifying any inconsistencies. Incidentally,

the ALJ additionally failed to credit the consistency in the record regarding the claimant's pressured speech. It was error for the ALJ to ignore this probative evidence. This is particularly problematic where, as here, the ALJ completely ignored an entire record from Dr. Belinga[4] supporting an additional finding of cognitive impairment in the claimant, consistent with the claimant's presentation at Mercy Hospital, before Dr. LaGrand, and at the administrative hearing. This makes the ALJ's choice to instead rely on the state reviewing physician opinions pre-dating Dr. Belinga's assessment of even more concern. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted]. A *proper* explanation of the persuasiveness of Dr. LaGrand's *and* Dr. Belinga's opinion that includes a discussion of supportability and consistency is therefore entirely absent from the ALJ's decision and constitutes reversible error.

Because the ALJ failed to properly evaluate the medical opinion evidence, the

---

[4] Indeed, the neurological exam was included in the record twice, and twice ignored by the ALJ. *See* Tr. 876-882, 1106).

decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

DATED this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**